Opinion issued February 6, 2003 













In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-00-01263-CV
____________
 
HONDA OF AMERICA MANUFACTURING, INC.
AND HONDA R&D CO., LTD., Appellants
 
V.
 
BRIAN NORMAN, INDIVIDUALLY AND AS SOLE
ADMINISTRATOR OF THE ESTATE OF
KAREN LESLIE VIVIENNE NORMAN, DECEASED,
AND MARY NORMAN, INDIVIDUALLY, Appellees
 
 
 

 
 
On Appeal from the 56th District Court
Galveston County, Texas
Trial Court Cause No. 93-CV-0986
 

 
 
O P I N I O N
           This is a products liability suit. A jury awarded Brian Norman, individually and as
sole administrator of the estate of Karen Leslie Vivienne Norman, deceased, and Mary
Norman, individually, (the Normans) $65 million in compensatory damages in a suit the
Normans brought against Honda of America Manufacturing, Inc. and Honda R&D Co., Ltd.,
after the Normans’ daughter, Karen Norman, drowned in her Honda Civic automobile. The
jury found that a design defect in the car’s seatbelt was the producing cause of Karen’s death.
           In five issues, Honda argues (1) the evidence was legally and factually insufficient to
prove causation; (2) the evidence was legally and factually insufficient to prove a safer
alternative design; (3) the trial court abused its discretion in admitting unqualified and
unreliable expert testimony; (4) the trial court abused its discretion in admitting evidence of
other incidents; and (5) the evidence was legally and factually insufficient to support the
jury’s award of “grossly excessive damages, which were influenced by improper
motivations.” We reverse and render a take-nothing judgment.
Facts and Procedural Background
           The Accident
           At approximately 2:00 a.m. on December 2, 1992, Karen attempted to back her car
up to turn around, and she accidentally backed down a boat ramp into the water in Galveston
Bay. Her passenger, Josel Woods, was not wearing a seatbelt and was able to get out of the
car by crawling out the passenger side window.


 After escaping, Woods reached back into
the sinking car to get her purse. Woods testified that Karen was calm and did not appear
scared. As Woods was swimming to the ramp, she heard Karen say, “Help me. I can’t get
my seatbelt undone.” Woods testified that, after she reached the ramp, she heard Karen yell
to her again that she could not get out of her seatbelt.


 
           A dive team located Karen’s car at 8:53 a.m. All of the windows were rolled up,
including the one Woods testified she had escaped through, and all the doors were closed. 
Karen’s body was found in the back seat. An autopsy revealed Karen’s blood-alcohol level
was .17.


 
           The Car
           At the time of the accident, Karen’s four-door 1991 Honda Civic was equipped with
a two-point passive restraint system—an automatic seatbelt that was mechanically drawn up
over the shoulder when the door was closed—supplemented with a manual lap belt. The
automatic seatbelt fastened itself with no action on behalf of the occupant. Robert Hellmuth,
a former National Highway Traffic Safety Administration employee, testified that, in 1990,
all cars were required to have either a passive belt system or an air bag. Hellmuth also
testified that a two-point passive restraint system was the most expensive seatbelt system in
use at the time Karen’s car was manufactured.
           The shoulder belt on both front seats was attached to a “mouse” that ran along a rail
above the door. When the door was closed, the mouse moved from its starting position, near
the front of the car, along the length of the door and then part-way down the pillar between
the front and back doors, pulling the belt over the shoulder of the driver. When the door was
opened or the ignition was turned off, the mouse moved forward, allowing the occupant to
get out of the car. The shoulder belt could be manually disengaged by pressing an emergency
release button located at the juncture of the belt and the mouse. Like most seatbelts, the
shoulder belt was naturally taut across the body, but it was easy to spool out more belt to
allow the occupant to lean forward and/or sideways. If the car experienced rapid deceleration
(such as that encountered here when the car hit the water) or substantial tilting of the vehicle,
however, the belt’s emergency locking retractor would engage, preventing spooling of the
belt and holding the occupant in her seat. 
           The Lawsuit
           The Normans sued Honda, alleging that the seatbelt system in Karen’s car was
defectively designed and prevented her from getting out of the sinking car. The case was
retried after the original trial resulted in a hung jury.
           The Normans contend that the emergency locking retractor locked as Karen backed
down the ramp and that she pulled on the door latch, causing the mouse to move and then
stall and the seatbelt to pin her to her seat. Because she was pinned to the seat, Karen was
unable to reach the emergency release button located over her left shoulder. The Normans
argue that the evidence showed the seatbelt system was defectively designed because (1) the
mouse was able to move even when the retractor was locked, allowing the seatbelt to pin an
occupant in the seat; (2) the seatbelt, when fully extended, could not be released easily and
rapidly by pressing the emergency release button; and (3) the emergency release button was
improperly located, in that Honda failed to provide an easy and rapid way to get out of the
seatbelt under conditions it knew would occur. 
           The jury found that Karen was 25% contributorily negligent, awarded Karen’s parents
$60 million in actual damages, and awarded $5 million to Karen’s estate. The trial court
reduced the award to $20 million for Karen’s mother and $18 million for Karen’s father, and
it denied Honda’s motion for remittitur as to the estate.
Design Defect
           The Civil Practice and Remedies Code prescribes two elements—a safer alternative
design and producing cause—that must be proved, but are not alone sufficient, to establish
liability for a defectively designed product. Tex. Civ. Prac. & Rem. Code Ann. § 82.005
(Vernon 1997);


 Hernandez v. Tokai Corp., 2 S.W.3d 251, 256 (Tex. 1999). A claimant not
only must meet the proof requirements of the statute but must show, under the common law,
that the product was defectively designed so as to be unreasonably dangerous, taking into
consideration the utility of the product and the risks involved in its use. Hernandez, 2
S.W.3d at 257.
Evidence of Safer Alternative Design
           In its second point of error, Honda argues that the judgment should be reversed
because there was insufficient evidence of a safer alternative design to the seatbelt restraint
system used in the Honda.
           Standard of Review
           When reviewing the legal sufficiency of the evidence, we consider all of the evidence
in the light most favorable to the prevailing party, indulging every reasonable inference in
that party’s favor. Associated Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276,
285-86 (Tex. 1998); Ned v. E.J. Turner & Co., Inc., 11 S.W.3d 407, 408 (Tex.
App.—Houston [1st Dist.] 2000, pet. denied). If there is more than a scintilla of evidence
to support the finding, we must uphold it. Associated Indem., 964 S.W.2d at 285-86; Ned,
11 S.W.3d at 408.
           We will sustain a factual sufficiency challenge only if, after viewing all the evidence,
the evidence is so weak or the verdict so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). 
As we examine the evidence, we remain mindful that the jury is the sole judge of a witness’s
credibility and the weight to be given the testimony. The jury may believe one witness and
disbelieve another and resolve inconsistencies in any testimony. McGalliard v. Kuhlmann,
722 S.W.2d 694, 697 (Tex. 1986). This Court cannot substitute its opinion for that of the
trier of fact and determine that it would have weighed the evidence differently or reached a
different conclusion. Hollander v. Capon, 853 S.W.2d 723, 726 (Tex. App.—Houston [1st
Dist.] 1993, writ denied).
Safer Alternative Design
           Honda argues that the Normans failed to meet their threshold statutory burden because
they failed to prove there was a safer alternative design to the Honda’s seatbelt restraint
system. To prove a design defect, the Normans had to show, among other things, that (1)
there was a safer alternative; (2) the safer alternative would have prevented or significantly
reduced the risk of injury, without substantially impairing the product’s utility; and (3) the
safer alternative was both technologically and economically feasible when the product left
the control of the manufacturer. Tex. Civ. Prac. & Rem. Code Ann. § 82.005(a)-(b);
General Motors Corp. v. Sanchez, 997 S.W.2d 584, 588 (Tex. 1999); Smith v. Aqua-Flo, Inc.,
23 S.W.3d 473, 477 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). The Normans had
the burden of demonstrating by a preponderance of the evidence that a safer alternative
design existed at the relevant time. Id. In addition, a plaintiff complaining of a design defect
is required to show that “the safety benefits from its proposed design are foreseeably greater
than the resulting costs, including any diminished usefulness or diminished safety” — that
is, that the alternative design not only would have reduced the risk of harm in the instant
case, but also would not, “under other circumstances, impose an equal or greater risk of
harm.” Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 337 (Tex. 1998). Thus,
the Normans had to prove that an economically and technologically feasible alternative seat
belt and release system was available and would have prevented or significantly reduced the
risk of Karen’s death without substantially reducing the utility to the “intended users” of the
product—namely, all automobile drivers. See Hernandez, 2 S.W.3d at 258. If no evidence
is offered that a safer design existed, a product is not unreasonably dangerous as a matter of
law. Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 433 (Tex. 1997). 
           The jury charge read, in part, as follows:
Was there a design defect in the seat belt restraint system at the time it
left the possession of Honda that was a producing cause of the occurrence in
question?
 
A “design defect” is a condition of the product that renders it
unreasonably dangerous as designed, taking into consideration the utility of the
product and the risk involved in its use. For a design defect to exist[,] there
must have been a safer alternative design.
 
“Safer alternative design” means a product design[,] other than the one
actually used[,] that in reasonable probability – 
 
1. would have prevented or significantly reduced the risk of the
occurrence in question without substantially impairing the
product’s utility and
 
2. was economically and technologically feasible at the time the
product left the control of Honda acting by and though [sic] its
agents and/or employees by the application of existing or
reasonably achievable scientific knowledge. 

The charge followed the language of section 82.005 and the Texas Pattern Jury Charge. Tex.
Civ. Prac. & Rem. Code Ann. § 82.005; PJC 71.4B.
           The Normans elicited testimony from several experts, but only two of these experts
commented on alternative designs for the seatbelt.


 Although they did not agree about the
feasibility of the various alternative designs, two of the Normans’ experts, Thomas Horton,
a mechanical engineer, and Kenneth Ronald Laughery, a human factors expert, testified that
there were three potential alternative seatbelt system designs: (1) the mouse could be on a
timer; (2) the release button could be located on the hip level, as in Toyota cars; and (3) there
could be two release buttons – one near the hip and one over the shoulder.



(1) Mouse timer
           Horton was the only witness who testified about a “mouse timer.”


 Horton testified
that his main criticism of the Honda seatbelt system was the tightening of the belt. In the
Honda system, the belt could be disengaged by manually pressing an emergency release
button located at the juncture of the belt and the mouse on the rail above the door. Horton
stated that he would modify the system by using a “timer mechanism.” He explained that if
the mouse, as it moved from front to rear, did not reach its position within a few seconds, it
should be assumed that the mouse was stuck. Instead of the mouse stopping in its place and
losing power, as allegedly occurred here, Horton suggested the mouse could have been
programmed to reverse direction and return to its forward position, releasing tension on the
belt. A timer could have been programmed so that, if the mouse did not travel its entire cycle
within a certain period of time, it would reverse and return to its original position. Horton
explained that it would have been “simple within the electronics” to have created such a
system. 
           To prove that the mouse timer constituted a safer alternative design to the overhead
manual seatbelt release in the Honda, the Normans had to show that (1) a mouse timer
existed or that the scientific knowledge to produce it was reasonably achievable, and (2) a
mouse timer was economically and technologically feasible at the time Karen’s car left
Honda’s control. See Tex. Civ. Prac. & Rem. Code Ann. § 82.005(b)(2); Hernandez, 2
S.W.3d at 258. On cross-examination, however, Horton admitted that he had never drawn
up schematics for a mouse timer system. The Normans argue that Horton testified that this
design was feasible. He did not. Instead, he simply answered “yes” to the general question
of whether, in his opinion, economically and technologically feasible designs were available
at the time Honda manufactured Karen’s car. Horton did not identify any such available
design, nor did he discuss the economic or technological feasibility of such a hypothetical
alternative design.
           Nor did Horton give any testimony to support a finding that, considering all relevant
risks, his alternative design would be safer than the one employed by Honda in that it would
not “under other circumstances impose an equal or greater risk of harm.” Uniroyal, 977
S.W.2d at 337. Horton further testified that he was not critical of Honda for the location of
the emergency release button. In fact, he testified that he was “not going to express [an
opinion] in this case” with respect to the location or functioning of Honda’s emergency
release button. 
           We conclude, based on the record, that the Normans failed to prove that a timer-controlled mouse was a safer alternative design to the seatbelt system in Karen’s Honda.
(2) Toyota alternative—right hip release only
           The Normans contend that, because of her small frame,


 Karen positioned the driver’s
seat close to the steering wheel, which made it difficult, if not impossible, for her to activate
the release button found over her left shoulder on the car frame. 
           The Normans argue that Kenneth Laughery testified that placing a release button over
the left shoulder of the driver was not sufficient. Laughery testified that, before 1991, at the
same time the Honda system in Karen’s car was designed, Toyota was using a release
mechanism in the form of a lever control at the lower right side of the driver that released the
emergency locking retractor. The Normans argue that Laughery concluded that Honda could
have adopted this as an alternative design, because it was technologically and economically
feasible. In fact, Laughery testified as follows:Q:And from your understanding was it economically and technologically
feasible at the time that this product left the control of Honda by the
application of existing or reasonably achievable scientific knowledge
to have provided this [Toyota-type] alternative design?
 
A:Yeah. I - - - well, I know it was technologically feasible because I
know it was done already. I don’t know what the cost of it was, but at
least it was judged to be economically feasible in the sense that it
existed in other vehicles.

           While the use of an alternative design by another manufacturer may establish
technological feasibility, we have held that, as a matter of law, it does not establish economic
feasibility. Smith, 23 S.W.3d at 477; Jaimes v. Fiesta Mart, 21 S.W.3d 301, 306 (Tex.
App.—Houston [1st Dist.] 1999, pet. denied). The existence of a technological advancement
goes to technological feasibility, while the cost of applying that technology to a particular
design goes to economic feasibility. Smith, 23 S.W.3d at 477. Evidence of use in the
marketplace alone is not sufficient to establish economic feasibility under Texas law. Id. 
To establish economic feasibility, the plaintiff must introduce proof of the “cost of
incorporating this technology.” Id. at 478.
           The Normans argue that several of the witnesses testified that the Honda seatbelt was
the most expensive seatbelt ever produced; therefore, by implication, the Toyota design must
have been economically feasible because it was less expensive than the existing Honda
design. However, even if the Normans presented more than a scintilla of evidence from
which the jury could reasonably have inferred that the Toyota passive-restraint system was
technologically and economically feasible, they did not establish that the right hip release
would have prevented or significantly reduced the risk of Karen’s death without “under other
circumstances, impos[ing] an equal or greater risk of harm.” See Uniroyal Goodrich Tire,
977 S.W.2d at 337. The Normans refer us to two of Honda’s experts, Terry Thomas, a
mechanical engineer and Honda’s automobile testing expert, and Masaaki Tanahashi,
Honda’s chief engineer and seatbelt expert, who both testified that the Toyota system was
“an alternative design” to the Honda system. Both then agreed that, although the Toyota
system, which has the lever release for the retractor at the console, is not a bad or defective
system, Honda decided to use a different system. Tanahashi testified that Honda chose a
release mechanism located over the driver’s left shoulder, instead of one located by the
driver’s right hip, to make it easier for third parties outside the vehicle to free trapped
drivers—who might be unconscious or immobile—in an emergency. Neither Thomas nor
Tanahashi testified that the Toyota right hip release design would have saved more lives than
the Honda system.
           Horton, the Normans’ expert and a mechanical engineer, testified that he had no
problem with the location of the Honda release mechanism, and he expressly disavowed any
intention to testify that one design was better or worse than the other. And Laughery, the
Norman’s human factors expert, specifically stated he “didn’t give [the Toyota design] as the
alternative design.”


 In fact, Laughery preferred Honda’s release button’s association with
the belt and testified that it was appropriate that Honda used a button instead of a lever. He
noted that Honda’s button was easily accessible to emergency personnel, that there was
contrasting red color on Honda’s release button, and that when one entered a Honda vehicle,
the seatbelt release mechanism was in one’s field of vision. In addition, Laughery was
impeached with his testimony from an earlier, unrelated proceeding involving a man who had
drowned when his seatbelt did not release. The seatbelt system was one of the Toyota design
and Laughery had offered his opinion in that case that the Toyota system design was
defective.
           We conclude, based on the record, that the Normans presented no evidence from
which the jury could reasonably find that the Toyota hip-release design would have prevented
or significantly reduced the risk of Karen’s death without imposing an equal or greater risk
of harm under all relevant circumstances. All of the responsive testimony from the Normans’
own expert witness—as from Honda’s—was to the contrary. The Normans, therefore, failed
to prove that the right-hip release system was a safer alternative than the shoulder-release
system in Karen’s Honda.
(3) Two release buttons
           Finally, Laughery testified that having two release mechanisms, one over the shoulder
and one near the hip, was another possibility. Laughery admitted, however, that he did not
know whether his proposed design—which he conceded had never been used in any
vehicle—was technologically feasible. When Laughery was asked how it would work, he
replied, “That’s an engineering question. I don’t know the answer to that. I don’t have
engineering design opinions.” Horton, the Norman’s engineering expert, explained that
having two release mechanisms was not technologically feasible. 
           We conclude, on the basis of the record, that the Normans failed to prove that a two-release-button design was technologically and economically feasible and thus a safer
alternative design.
           No Evidence
           The Normans failed to show that the mouse timer, the hip release design used by
Toyota, or the two-release-button system existed, were technologically and economically
feasible, and were safer under relevant circumstances than the seat belt release system
present in the Honda. There was, therefore, no evidence that a reasonably safer alternative
design existed for Honda’s passive restraint system when the car was manufactured. Having
failed to present such evidence, the Normans failed to carry their threshold statutory burden
of proving a safer alternative design. See Tex. Civ. Prac. & Rem. Code Ann. § 85.005
(Vernon 1997). We hold that the evidence was legally insufficient to support the jury’s
finding that there was a design defect in Karen’s Honda. See Grinnell, 951 S.W.2d at 433. 

           We sustain Honda’s second point of error.
           Having determined that the evidence was legally insufficient to support the jury’s
design defect finding, which is a threshold condition of a finding of liability, we need not
address Honda’s remaining issues on appeal.
           We reverse and render a take-nothing judgment.




                                                                             Evelyn V. Keyes
                                                                             Justice


Panel consists of Justices Hedges, Jennings, and Keyes.